490 So.2d 530 (1986)
Edward M. HASPEL et al.
v.
ROLLINS PROTECTIVE SERVICE, INC. et al.
No. CA-4708.
Court of Appeal of Louisiana, Fourth Circuit.
June 5, 1986.
Rehearing Denied July 16, 1986.
*531 Russell J. Schonekas, Berrigan, Danielson, Litchfield, Olsen & Schonekas, Harriet R. Campbell Young, New Orleans, for plaintiffs-appellants.
Nathan T. Gisclair, Jr., Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, for defendants-appellees.
Before GULOTTA, WILLIAMS, ARMSTRONG, JJ.
WILLIAMS, Judge.
Plaintiff, Edward M. Haspel, individually, and as administrator of the estates of his minor children ("Haspel"), initiated this action against Rollins Protective Services Company ("Rollins") based on a written "INSTALLATIONSERVICE AGREEMENT" entered into between Haspel and Rollins on January 12, 1977. Gulf Insurance Group ("Gulf") and Reliance Insurance Company ("Reliance") joined this suit as subrogees to recover damages for payments made to Haspel.
Haspel and Rollins entered into an agreement whereby Rollins agreed to install and service a burglar/fire alarm system in the Haspel residence for a monthly service charge of $42.20. Rollins was also the manufacturer of the system. This contract continued in effect between the parties until the occurrence of a fire at the Haspel residence on November 1, 1981. At the time of the fire, Rollins had installed two heat detectors, a smoke detector and a twenty-four hour monitor system which was to automatically notify the fire department *532 in case of a fire. However, on November 1, 1981, when a fire occurred, the alarm system did not function.
Haspel instituted this action against Rollins alleging in its petition negligence on Rollins's part for its failure to properly manufacture, install or service the fire alarm system as well as "any and all other acts of negligence which may be shown at trial." Subsequent thereto, Rollins moved for and was granted summary judgment in its favor on the grounds that the contract contained an exculpatory or limitation of liability clause. The particular language in the "INSTALLATION-SERVICE AGREEMENT" relied upon by the trial judge provided that:
It is further agreed that Rollins is not an insurer of the Customer's property and that all charges and fees herein provided for are based solely on the cost of installation, service of the System and scope of liability hereinafter set forth and are unrelated to the value of the Customer's property or the property of others located on the Customer's premises.
"The parties agree that if loss or damage should result from the failure or performance of operation or from defective performance or operation or from improper installation or servicing of the System, that Rollins' liability, if any, for the loss or damage thus sustained shall be limited to a sum equal to ten (10%) percent of one year's service charge or $250.00, whichever sum is the greater, and that the provisions of this paragraph shall apply if loss or damage, irrespective of cause or origin, results, directly or indirectly to persons or property from performance or nonperformance of obligations imposed by this Agreement or from negligence, active or otherwise, of Rollins, its agents or employees. [Emphasis by bold print in the actual contract.]
In Carriage Meat Company, Inc. v. Honeywell, Inc., 442 So.2d 796 (La.App. 4th Cir.1983), an exculpatory or limitation of liability clause (the terms are interchangeable) similar in substance to the one at bar was reviewed. It was determined that exculpatory clauses are not ipso facto contrary to public policy and that these clauses were valid and could be utilized to allow one of the contracting parties to avoid financial responsibility caused by that party's negligent conduct. See also Lazybug Shops, Inc. v. American Dist. Telegraph, 374 So.2d 183 (La.App. 4th Cir. 1979), writ denied 376 So.2d 1271 (La. 1979); Alan Abis v. Burns Electronic Security Serv., Inc., 283 So.2d 822 (La.App. 2nd Cir.1973). The effect of the exculpatory clause was limited in Honeywell, however, to those instances where the party seeking to exculpate or limit his liability on the basis of this provision was guilty of ordinary negligence. Ultimately, it was held that the scope of the clause did not extend to include actions amounting to gross negligencedefined as a "willful or deliberate disregard of its [Honeywell] contractual duty"and concluded that summary judgment was improper and liability could be imposed irrespective of the exculpatory clause on these grounds. 442 So.2d at 798.
Appellants argue that a material issue of fact exists based on several grounds, and that, if proven, any one of these are sufficient to fall within the Honeywell exception. More particularly, they argue that a question of fact remains concerning whether Haspel intended to limit Rollins's liability for damages, whether Rollins misrepresented the capacity of the alarm system to meet Haspel's needs, whether the contract in question is an adhesion contract and whether Rollins should be held strictly liable due to a defect in the design or manufacture of the system. We find none of these grounds to be sufficient to abrogate the provisions contained in the exculpatory clause and affirm the summary judgment in Rollins's favor.
On the issue of intent, Haspel argues that his attention was not drawn to the clause nor was it prominently displayed on the form that he was contracting away certain rights. This argument was raised and rejected in Lazybug Shops, Inc. v. American District Telegraph Co., supra, *533 (interpreting a clause similar in substance to the one at bar), based upon the rationale "that knowledge of the content of an instrument is presumed if a signature is present on that instrument. A party cannot avoid an obligation merely by contending that he had not read it or did not understand it." (citations omitted.) 374 So.2d at 185-86.
The contract in question is a one-page instrument and the limitation clause appears in bold-black lettering. Haspel's signature appears in the lower right-hand corner. Haspel's signature is evidence of his objective intent to be bound by the provisions in the contract. Lazybug Shops, Inc. This argument lacks merit.
Appellants' claim of misrepresentation is based on the allegation that Rollins knew that protection was inadequate, exemplified by Rollins's installation of an additional antenna in the Haspel residence after the fire occurred. Irrespective of whether misrepresentation would be a cognizable ground to ignore the exculpatory clause, we find that evidence of a subsequent remedial measure to establish an intent to deceive is insufficient proof to overcome summary judgment. Steps taken to repair the alarm system or to strengthen its capacity after the accident to prove knowledge or culpable conduct before the accident pose relevancy problems. It is for this reason that such evidence is inadmissible. (See Rule 407 of the Federal Rules of Evidence which provides that "[w]hen, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event.")
Discovery has been extensive. Appellants have relied exclusively upon Rollins's act of installing the additional antenna as the basis for the alleged misrepresentation. Since this is evidence which is not relevant in making this determination, it was proper for the trial court to ignore appellants' claim of misrepresentation. Accordingly, this argument lacks merit.
Appellants suggest that the instant contract is an adhesion contract because the document Haspel signed was prepared by Rollins, a commercial enterprise with superior bargaining power. The question of unequal bargaining power was raised and rejected in Lazybug Shops, Inc. We need not consider this issue. Furthermore, we find that an artificial distinction between commercial enterprises and consumers is inappropriate. As illustrated by the Louisiana Supreme Court in Louisiana National Leasing Corp. v. ADF Service, Inc., 377 So.2d 92 (La.1979), sophistication and educational level, not commerciality, are the primary considerations.
Appellants argue that Rollins was grossly negligent because of its periodic servicing and improper installation of the system demonstrating a "flagrant and open disregard for the safety and property of its customers." They argue that the exculpatory clause should not be utilized to relieve Rollins from this type of conduct.
We do not find Rollins's actions to be the willful or wanton negligence contemplated by the court in Honeywell for the exception to apply. Appellants do not allege successive acts of negligence. See FMC Corp. v. Continental Grain Co., 355 So.2d 953 (La.App. 4th Cir.1977). Furthermore, there is nothing to indicate that Rollins failed to respond to an emergency in spite of a clear and obvious need to react as was shown in Honeywell. Rather, we find that the substance of appellants' allegations to be similar to those advanced in Alan Abis, Inc. v. Burns Electronic Security, Inc., which involved the application of an exculpatory clause to a claim against the alarm company for negligence in the installation and servicing of the system. In upholding the limitation of damages, the court held that "[t]he contract concerned here is clear and specific. Its observance will lead to no absurd consequences. Thus, it must be given effect. LSA-CC. Art 1945." 283 So.2d at 826. See also Lazybug Shops, Inc., supra.
*534 Although it has not been established whether the alarm system failure was attributable to Rollins's negligence in the installation or servicing of the system, this does not preclude us from ruling on the merits of appellants' claim on this issue. It is clear that Rollins did not undertake to be an insurer of Haspel or his property. The instant contract expressly stipulated the measure of damages to which Haspel would be entitled upon any breach by Rollins and specifically expressed this contemplation in the exculpatory clause. We find that Rollins's liability is to be restricted in accordance with the contract. This argument lacks merit.
Finally, appellants maintain that the alarm system contained a manufacturing or design defect for which Rollins should be held strictly liable. Aside from the issue of whether the alarm system could be deemed "unreasonably dangerous to normal use" (an element under strict liability Weber v. Fidelity & Casualty Ins. Co. of N.Y., 259 La. 599, 250 So.2d 754 (1971)), we find that the exculpatory clause would cover liability for a manufacturing or design defect. In comparing the standards for negligence and strict liability, the Louisiana Supreme Court has stated that "the test in strict liability cases, except for the element of the defendant's scienter, is virtually the same as that for negligence." Kent v. Gulf States Utilities Co., 418 So.2d 493, 498 (La.1982). The instant exculpatory clause provides liability shall be limited "if loss or damage should result from the failure of performance or operation or from defective performance or operation ... of the system." Liability shall be limited in accordance with the contract. This argument lacks merit.
Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.C.C.P. art. 966; Metropolitan Bank of Jefferson v. Summers, 257 So.2d 179 (La.App. 4th Cir.1972); writ denied, 261 La. 462, 259 So.2d 914 (1972). No triable issues of fact remain that need to be decided for the disposition of this case. Rollins's liability is to be limited to the sum of $250.00 in accordance with the terms of the contract.
The judgment appealed is accordingly affirmed in favor of Rollins Protective Services, Inc. against plaintiffs-appellants. Costs of this appeal to be borne by plaintiffs-appellants.
AFFIRMED.